JANET GREESON
greesonjan@aol.com
#161000, PO Box 2743
Carson City, NV 89702
702-222-1988
DEFENDANT, PRO SE

UNITED STATES DISTRICT COURT FOR

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| ROCKSHORE INVESTMENTS, LLC, A Nevada Limited Liability Corporation<br>Plaintiff,<br>vs.<br>1 WORLD FOUNDATION LIMITED, RODERICK A. KAGY, an individual, JANET GREESON, an individual, DAVID CHARLES MILLER, an individual, RO FINANCIAL GROUP, INC., and DOES through 10, inclusive,<br>Defendant(s) | Case No.: 8:14-cv-00884-CJC-(JCGx)<br>**NOTICE OF MOTION AND DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GREESON'S MOTION TO ENFORCE PREVIOUS SETTLEMENT AGREEMENT AND TO DISMISS COMPLAINT AGAINST DEFENDANT GREESON**<br>**Hearing Date: APRIL 20, 2017**<br>**Hearing Time: 10 AM**<br>**Judge: HON. JAY C. GANDHI**<br>**Place: 6A** |

**TO ROCKSHORE INVESTMENTS, LLC, PLAINTIFF AND ITS ATTORNEY OF RECORD:**

NOTICE IS HEREBY GIVEN that on April 20, 2017 at 10:00 a.m. or as soon thereafter as Defendant Pro Se, may be heard by the above-entitled court, located at, Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA, 92701, Courtroom 6A, 6th Floor, California, in the courtroom of the HONORABLE JAY C. GANDHI, Defendant will and hereby do move the Court To Enforce Previous Settlement Agreement And To Dismiss Complaint Against Defendant Greeson, as a matter of law. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the declarations in support of this Motion from Defendant Janet Greeson and the pleadings and papers filed herein and upon such other matters as may be presented to the Court at the time of the hearing.

Dated this day 22 of March, 2017,

By: /s/ Janet Greeson, Defendant Pro Se.

# TABLE OF AUTHORITIES

**Cases**

Beard V. Goodrich, 2 Cal. Rptr. 3d 160 (2003)…………………………13, 14

Bowers V. Raymond J. Lucia Companies, Inc, 206 Cal. App. 4th 724 (2012)..11

Donovan V. Rrl Corp, 27 P. 3d 702 (2001)…………………………………..17.

Founding Members of Nbcc V. Nbcc, Inc, 135 Cal. Rptr. 2d 505 (2003)……..13

Marin Storage Inc. V. Benco Contracting, 107 Cal. Rptr. 2d 645 (2001)…….13

Money Store V. Southern Cal. Bank, 120 Cal. Rptr. 2d 58 (2002)………14

Myers V. Trendwest Resorts, Inc, 178 Cal. App. 4th 735 (2009)…………11

Rodriguez V. Oto, 212 Cal. App. 4th 1020 (2013)…………………………13

Stewart V. Preston Pipeline Inc, 36 Cal. Rptr. 3d 901 (2005)………14, 15, 16, 17

Terry V. Conlan, 33 Cal. Rptr. 3d 603 (2005)……………………………..11

Wal-Noon Corp. V. Hill, 45 Cal. App. 3d 605 (1975)……………………17

Weddington Productions, Inc. V. Flick, 60 Cal. App. 4th 793 (1998)…10, 11, 12

Wood V. Metzenbaum, 107 Cal. App. 2d 727 (1951)……………………..18

**MEMORANDUM IN SUPPORT OF DEFENDANT GREESON'S MOTION TO ENFORCE PREVIOUS SETTLEMENT AGREEMENT AND TO DISMISS COMPLAINT AGAINST DEFENDANT GREESON**

*(Defendant is Pro Se. This motion and memorandum in support were both prepared by Defendant with some assistance by a Paralegal and reviewed by a lawyer.)*

Defendant Janet Greeson files this memorandum of law in support of her motion to enforce the terms of the parties' previous settlement agreement and to dismiss the complaint against her in this civil action.

## INTRODUCTION

Defendant Greeson was introduced to 1 World in early 2010 for consideration of funding Samaritan/NextGen Foundation projects. The Samaritan/NextGen Foundation projects were a result of a contractual collaboration with Georgetown University. These projects included several peer-reviewed, life-saving drugs that were in various stages of approval with the Food and Drug Administration. 1 World was an entity based in Ireland. Roderick Kagy, on behalf of 1 World, asked Defendant Greeson to serve as Vice President

of Project Funding to facilitate 1 World's mission to fund projects. Defendant Greeson's function was to consider viable projects for project funding.

In the course of this litigation, on January 31, 2016, there occurred a court-supervised mediation where Mitchell R. Goldberg served as mediator. The parties (and the Court) were fortunate and the case was settled. The Plaintiff, Defendant Kagy, and Defendant 1 World entered into the Settlement Agreement and Mutual Release **(Exhibit A),** which had the effect of releasing all claims against Defendant Kagy, all claims against Defendant 1 World, and all claims against any and all officers, employees and agents of 1 World. Defendant Janet Greeson was an officer and agent of 1 World and thus was released from liability along with Kagy and 1 World itself. Janet Greeson was continually identified in Plaintiff's complaint as an agent and officer of 1 World. United States District Judge, Honorable Cormac J. Carney of this District Court, found as a fact and conclusion: "It is undisputed that Greeson was an officer of 1 World." In the same order, Judge Carney held: "There is no need to resolve the parties' positions here: the existence of an express contractual release of 1 World officers is a fact that constitutes a defense for Greeson."

Defendant Greeson accordingly asserts that she is entitled to have the settlement agreement enforced and that such would result in a mandated dismissal of the complaint against her. If the record were ambiguous as to whether

Defendant Greeson were an officer or agent acting on behalf of Defendant 1 World, Defendant Greeson would not be entitled to a judgment or dismissal of the complaint until the ambiguity was resolved. However, the Court's finding and conclusion is supported in the record and by the averments of the Plaintiff itself. The averments in the complaint, of course, constitute an admission and invoke the principle of judicial estoppel. The Plaintiff would be barred from alleging that Defendant Janet Greeson was an officer and agent of 1 World and then attempting to deny it, and Plaintiff has not in fact denied it. For this reason there is no need to have a trial. The settlement agreement and release is not ambiguous and the law does not permit a party to introduce evidence to vary, alter, or contradict the unambiguous terms of a contract. Thus, the emails that Plaintiff has informed the Court that it wishes to bring before the Court are inadmissible and must be disregarded by law.

There can be no doubt that 1 World was a party to the release and was one of the "Released Parties." What effect did releasing Defendant 1 World have on Defendant Janet Greeson? The answer, of course, is that all of the agents, officers, and persons affiliated with 1 World were also released. Paragraph 9 of the release makes that clear:

*In consideration of the compromise of the Parties' respective claims and defenses and subject to the terms of this Agreement, each of the Parties, and their*

*respective successors, owners, stockholders, members, directors, partners, beneficiaries, executors, agents, employees, past employees, representatives, attorneys, insurers, heirs and assigns, do hereby fully release and forever discharge each other, their past, present and future officers, executors, successors, owners, members, directors, partners, beneficiaries, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns, and all other persons, firms, employers, or corporations with whom any of the former have been, are now or may hereafter be affiliated, of and from any and all past or present contracts, agreements, claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation of any nature whatsoever, known or unknown, whether based on a tort, contract, or other theory of recovery, and whether for compensatory or punitive damages, which each other at any time heretofore has had, owned or held or each other now has, owns or holds or which each other could, shall or may hereafter have, own or hold against each other by reason of any matter, cause, fact, thing, act or omission whatsoever since the beginning of time through the date hereof. This mutual release does not release the Parties from the performance under and enforcement of the Agreement.*

(Exhibit A ¶ 9) (emphasis added).

This language is obviously comprehensive and unambiguous. The "Parties," Rockshore, Roderick Kagy, and 1 World, mutually released each other, and virtually everyone connected to or affiliated with any of the three of them, from any and all claims of any nature whatsoever. The language of paragraph 9 released all officers, employees and agents of 1 World (because 1 World was included in the definition of both "Kagy" and "Parties") from any claims, past or present, of any nature whatsoever that were or could have been asserted against them by Rockshore. That comprehensive list of released persons included Janet Greeson.

Plaintiff repeatedly pled in its complaint (paragraphs 92-97) that Janet Greeson was acting as an agent and officer of 1 World, so her role as an officer, employee and agent of 1 World is undisputed. As we have seen, **Judge Carney held as much in his Order of June 9, 2016, wherein he found and concluded that it was "undisputed that Greeson was an officer of 1 World."** This is now the law of the case is not believed to be disputed by Plaintiff.

Accordingly, all claims asserted in Plaintiff's complaint against Greeson have been released, and the complaint against her must now be dismissed.

The settlement agreement **(Exhibit A,)** makes clear that valuable consideration has passed to Plaintiff for its release of the released parties. The amounts paid and to be paid are summarized in Paragraph 5. The law does not

allow a Releasor to accept money and other benefits in bargained exchange for releasing the named Released Parties and then to deny that a release was intended. Continuing with this case constitutes an effort to recover twice from at least one of the Released Parties. Plaintiff must be held to the terms of the release when Plaintiff has enjoyed the benefits of that release. The law does not permit Plaintiff to accept the benefits of a settlement agreement and then to renounce the part of the agreement that constitutes a release of the Released Parties.

Plaintiff was, of course, represented by competent counsel at all material times, including when the settlement was negotiated and agreed to and when the settlement agreement was signed by Mr. Gianulias as president of of Rockshore Investments, LLC. Paragraph 15, *"Independent Advice of Counsel,"* provides: *"The Parties represent and declare that in executing this Agreement, each relied upon the advice and recommendations of their own independently selected counsel. Further, the Parties represent that each has had sufficient opportunity to consult with their respective attorneys about the terms and conditions of this Agreement prior to its execution. Each Party has read and fully understands the full contents and effect of this Agreement, and consciously and voluntarily contracts and agrees as provided herein."* (Exhibit A, ¶15). Of course this recitation is binding on Rockshore, and the law does not permit Rockshore now to

profess that it did not understand that it was releasing all the officers and agents of 1 World when it signed the agreement.

## ARUGUMENTS

**1. Defendant's motion to enforce the parties' previous release and dismiss the claims against her should be granted. Plaintiff's signature on the settlement agreement and release is an outward and objective manifestation of Plaintiff's consent to the settlement agreement (release) and all its terms.**

Section 664.6 of the California Code of Civil Procedure provides that where parties to pending litigation stipulate to settle the case orally in court, or in a writing signed outside of court, the trial court may enforce the settlement by entering judgment pursuant to its terms on the motion of one of the parties. (Cal. Code of Civ. Pro. Sec. 664.6). The legislature enacted section 664.6 to provide a summary procedure for specifically enforcing a settlement agreement without the need for a new lawsuit. Weddington Productions, Inc v. Flick, 60 Cal. App. 4th 793, 809-10 (1998). Thus, even though Plaintiff will file a motion for summary judgment based essentially on the same grounds, the cited California statute gives the Court legal authority to grant this motion without enduring the more laborious

procedure accompanying a motion for summary judgment. Many states do not have a statute like Cal. Code §664.6. Since California does, the Court should simply enter an order enforcing the settlement agreement and release, and dismiss the complaint and the remainder of the case.

In ruling on a Section 664.6 motion the trial court acts as the trier of fact to determine whether the parties entered into a valid and binding settlement and the terms of that agreement. Bowers v. Raymond J. Lucia Companies, Inc., 206 Cal App. 4th 724, 732; Terry v. Conlan, 131 Cal. App. 4th 1445, 1454. The court may consider oral testimony or it may determine the motion on declarations alone. Terry v. Conlan, supra, 1454. Although the trial court may resolve factual disputes concerning the existence of the settlement and its terms, "[N]othing in section 664.6 authorizes a judge to create the material terms of the settlement, as opposed to deciding what terms the parties themselves have previously agreed upon." Weddington, supra, at 810. (emphasis original).

These averments in Plaintiff's complaint that Defendant Greeson was an agent of 1 World constituted a judicial admission under California law. Myers v. Trendwest Resorts, Inc., 178 Cal. App. 4th 735, 746-48 (2009).

It is anticipated that Plaintiff will argue it never intended to release Defendant Greeson. Plaintiff's anticipated challenges to this motion to enforce the terms of the Settlement Agreement completely lack merit. Plaintiff agreed to the

release of Defendant Greeson by signing the settlement agreement. Plaintiff's signature on the release vitiates its argument that it never intended to release the officers and agents of 1 World. The unambiguous language of the release states that it encompasses a release of liability against every employee, officer, and agent of 1 World, not just of 1 World itself. Plaintiff does not deny signing the release and it does not contend that it was coerced, threatened, or strong-armed into signing the release. The terms of the release itself belie any such suggestion. Plaintiff merely complains that the release says something that Plaintiff did not intend. Such an assertion, as a ground for not enforcing the words of the release, is contrary to the law of every state in the union, not just that of California.

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." Weddington, supra, 60 Cal.App.4th at 810. Consent is an essential element for the formation of any contract and the consent must be mutual. Id. at 811; Cal. Civ. Code §§1550 & 1565.

"The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." Weddington, supra, 60 Cal.App.4th at 810. "[M]utual consent is gathered from the reasonable meaning of the words and acts of the parties and not from the unexpressed intentions or understanding."

Rodriquez v. Oto, 212 Cal. App 4th 1020, 1027 (2013) (emphasis original). See, Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc. Cal.App. 4th 944, 956 (2003) ("California recognizes the objective theory of contracts [citation omitted], under which 'it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation'"). The parties' "subjective intent, or subjective consent, therefore is irrelevant. It is enough that a reasonable person would understand that the parties consented to the contract and consented to the same terms in the same sense." Beard v. Goodrich 110 Cal. App. 4th 1031, 1040 (2003).

"In the absence of fraud, mistake, or other vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth therein." Rodriguez, supra, at 1027; Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc., 89 Cal. App. 4th 1042, 1049 (2001) ("Ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.").

Plaintiff's contention that there was no mutual consent because it never intended and never agreed to release Defendant Greeson flies in the face of the unambiguous language of the release and reflects nothing more than Plaintiff's subjective intent. Under well-established California law, as shown by the cases

cited hereinabove, Plaintiff's subjective intent is simply irrelevant. Beard, supra, 110 Cal. App. 4th at 1040; Stewart v. Preston Pipeline, Inc. (2005) 134 Cal. App. 4th 1565, 1587 (parties objectively manifested their mutual assent to a settlement by signing a written settlement agreement); and Money Store Investment Corp. v. Southern Cal. Bank (2002) 98 Cal. App. 4th 722, 728 (bank objectively manifested its consent when its employees signed an acknowledgment and accepted the printed escrow conditions).

**2. The execution of the settlement agreement and mutual release supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the agreement.**

It is anticipated that Plaintiff may attempt to introduce evidence of alleged negotiations that occurred during the mediation in an attempt to avoid enforcement of the terms of the Mutual Release. This would violate the law of California and of all states, except if there were evidence of explicit duress leading to the signing of the agreement. Evidence of pre-contract negotiations or occurrences violates the parole evidence rule, and any attempt to avoid enforcement of the agreement based on evidence of pre-agreement communications is impermissible. Under California law, "[t]he execution of a

contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.” Cal. Code of Civ. Pro. §1856. Accordingly, any purported evidence of the negotiations leading up to the execution of the Settlement Agreement is ineffective as a defense to the enforcement of the Agreement and cannot be considered.

Pursuant to Fed. R. Evid. 408, all discussions during a settlement conference are confidential and thus inadmissible for any purpose, including for determining whether the parties actually agreed to what the settlement agreement shows they agreed to. Any contrary application would violate the parole evidence rule. Exchanges of words, conversations, and negotiations between the parties and their attorneys during mediation are barred as a matter of law, and in this case would also violate the mediation Order issued by this Court. In Stewart v. Preston Pipeline Inc., supra, the California Court of Appeals reiterated both the relevant sections of the California Code and the strong policy in California that communications during a mediation are strictly confidential so as to foster candid discussions and a complete exchange of information at mediation.

Evidence Code Sec. 1123 specifically provides an exception to mediation confidentiality in the event that a written settlement agreement resulting from mediation explicitly provides that it shall be admissible or subject to disclosure, or if the agreement provides that it is enforceable or binding, or if all the parties to

the agreement expressly agree in writing to the disclosure of the agreement. Therefore, the actual document is admissible for certain purposed, such as to seek enforcement or attorneys' fees as Defendant seeks herein, but the underlying negotiations and statements made in mediation are excluded. Stewart v. Preston Pipeline Inc., supra.

**3. No mistake of fact vitiated plaintiff's consent.**

It is further anticipated that Plaintiff may contend that its consent to the release of Defendant Greeson was based on mistake of fact. Because Plaintiff pled in its complaint that Defendant Greeson was at all times an agent and/or officer of 1 World, pursuant to the doctrine of judicial admission discussed above, Plaintiff is precluded from arguing that it did not know that Defendant Greeson was an agent, employee, or officer of 1 World. Plaintiff is then left to argue that (i) knowing that Defendant Greeson was an agent, employee, or officer of 1 World, and (ii) having read and consulted with counsel as to the meaning of the comprehensive and unambiguous language of ¶9, and (iii) having represented Rockshore's officers and its attorney all read and understood the contents and the effect of the release, that, nevertheless, (iv) with advice of counsel, Plaintiff mistakenly believed that Defendant Greeson was not released from liability by the release.

Under those undisputed uncontradicted facts, Plaintiff cannot successfully argue either unilateral or mutual mistake. “Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making a mistake, and consisting in . . . an unconscious ignorance or forgetfulness of a fact past or present, material to the contract . . . .” (Cal. Civ. Code §1577.) This statutory definition prevents a party from avoiding a contract or any of its terms based on a mistake of fact when the mistake was caused by the neglect of a legal duty on the part of the party asserting the mistake. Donovan v. RRL Corp., 26 Cal. App. 4th 61, 283 (2001); Stewart, supra, 134 Cal. App. 4th at 1588.

It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.

Stewart, supra, 134 Cal. App. 4th at 1588-1589.

Failure to make reasonable inquiry to ascertain, or effort to understand the meaning and content of the contract upon which one relies constitutes neglect of a legal duty such as will preclude recovery for a unilateral mistake of fact.

Wal-Noon Corp v. Hill, 45 Cal. App. 3rd 605, 615 (1975).

If Plaintiff asserts unilateral and/or mutual mistake of fact, Plaintiff's neglect of its legal duty to read the agreement defeats any such claim based on a unilateral or mutual mistake of fact. (Cal. Civ. Code Sec. 1577.) A contractual duty is a legal duty. Plaintiff, under ¶ 15 of the release, was contractually and legally duty-bound to read, understand, and comprehend the effect of the release it signed. The fact that it consented to the provisions requiring it to be bound and did so with the advice of counsel simply adds to the hypocrisy of entering into a release and then attempting to continue suing one of the released parties after receiving bargained-for consideration for the release.

Any claim of mutual mistake of fact asserted by Plaintiff misses the mark. What Plaintiff is actually attempting to claim is a unilateral mistake on its part. However, a unilateral mistake would not entitle Plaintiff to relief. Defendant Greeson and 1 World did not make a mistake and intended that Janet Greeson be released. "A 'mutual' mistake is one made by both parties as to the same proposition. Because one or the other may have been mistaken does not constitute mutuality of mistake and does not constitute ground for rescission for mutual mistake." Wood v. Metzenbaum, 107 Cal. App. 2d 727, 731(1951); 14 Cal. Jur. 3rd "Contracts", §116 (2014) (emphasis added). Here, we anticipate Plaintiff will argue: (i) it mistakenly believed the release of the other defendants did not release Defendant Greeson; or (ii) that somehow Defendant Greeson did

not fall within the plain language of ¶ 9, or (iii) that excluding Defendant Greeson from ¶ 9 was an agreed-upon term that was mistakenly excluded from the final Agreement. That demonstrates not a mutual mistake, but a series of unilateral mistakes by Plaintiff. As we have seen, this would not create a defense to the release. If Plaintiff made a mistake in signing the release, its officers should have read the document before signing it. The title of the release document, Settlement Agreement and Mutual Release, would have been a good place to begin reading.

## CONCLUSION

Accordingly, Defendant Greeson respectfully requests the entry of an Order enforcing the Settlement Agreement and Mutual Release and dismissing all claims against her, with prejudice.

/s/ Janet Greeson

## CERTIFICATE OF SERVICE

I hereby certify and declare under penalty of perjury that on this March 22, 2017, I have furnished Plaintiff’s counsel a true copy of the foregoing memorandum in support of motion to enforce settlement agreement and dismiss complaint by electronically filing said memorandum with the Clerk of the Court

using the CM/ECF system, which sent notification of such filing to counsel of record.

/s/ Janet Greeson