# EXHIBIT A

# Settlement Agreement and Mutual Release

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into by and between Rockshore Investments, LLC ("Rockshore"), on the one hand, and Roderick A. Kagy and 1 World Foundation Limited (together, "Kagy"), on the other hand. Rockshore and Kagy are referred to herein together as the "Parties".

## RECITALS

WHEREAS, Rockshore commenced legal proceedings against Kagy by filing an action entitled *Rockshore Investments, LLC v. 1 World Foundation Limited et al.*, Case No. 8:14-cv-00884, in the United States District Court for the Central District of California (the "Litigation");

WHEREAS, the Parties acknowledge, agree and covenant that it is in their mutual best interests to settle any and all claims between them, as it relates to the claims and defenses that they have asserted against one another, without any admission of liability and without incurring any additional attorneys' fees, costs and/or expenses, in connection with the Litigation;

NOW, THEREFORE, IN CONSIDERATION of the mutual promises, covenants, warranties and agreements set forth herein below, and for other good and valuable consideration, the receipt and sufficiency which is hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. Stipulated Judgment. In exchange for Rockshore's dismissal of Kagy from the Litigation, with prejudice, Kagy has stipulated to entry of judgment under the conditions stated in this Agreement. A copy of the stipulated judgment is attached hereto as Exhibit A, (the "Judgment"). The Judgment is to be entered against Kagy in the event that Kagy defaults on any of the settlement payments set forth below. In the event of a default, as defined herein, the Judgment will bear interest at ten percent (10%) per annum or the then existing legal rate, whichever is lower, from the date of entry of the Judgment, until fully satisfied.

2. Dismissal with Prejudice. The Parties will execute a stipulation to dismiss Kagy, with prejudice, from the Litigation, to be filed within ten days of payment on February 1, 2016, of the first settlement payment identified in the next paragraph.

3. Removal of Internet Postings. Rockshore will use its best efforts to remove all negative internet postings regarding or resulting from the facts and circumstances underlying the Litigation on payment of the first settlement payment on February 1, 2016.

4. Cooperation. Kagy agrees to assist Rockshore in prosecuting any case against RO Financial Group, Inc. (RO) and David C. Miller (Miller) related to or arising from the facts and circumstances underlying the Litigation. In addition, Kagy agrees to provide any information in his possession about the current whereabouts of Janet Greeson within thirty days of execution of this Agreement..

5. Settlement Payments. Kagy will make periodic settlement payments (each one a "Settlement Payment") to satisfy the Judgment, which will accrue interest at a rate of four percent (4%) per annum (so long as Kagy does not default on payment), via bank wire transfer to Rockshore in the following amounts and at the following specified times:

a. $5,000 before or by close of business (5 pm PST) on 02/01/16;
b. $500 per month from 04/01/16 through 11/16;
c. $10,000 before or by close of business (5 pm PST) on 12/01/16;
d. $800 per month from 02/01/17 through 11/17;
e. $15,000 before or by close of business (5 pm PST) on 12/01/17;
f. $1,000 per month from 02/01/18 through 11/18.
g. $25,000 by close of business (5 pm PST) on 12/01/18;
h. $2,000 from 02/01/19 through 11/19;
i. $25,000 before or by close of business (5 pm PST) on 12/01/19;
j. $2,500 from 02/01/20 through 11/20;
k. Balance of $166,000 before or by close of business (5 pm PST) on 12/01/20.

6. Event of Default. Kagy will be in default if they fail to wire any Settlement Payment within ten calendar days of the deadlines specified in the foregoing paragraph. Upon written notice of default by Rockshore, Kagy will have ten calendar days to cure the default (the "Grace Period"). If the default is not cured by the end of the Grace Period, Rockshore shall be entitled to enter the Judgment. Payments by Kagy may be temporarily suspended only in the event of catastrophe, as agreed upon by the Parties or as permitted by the mediator, Mitchel R. Goldberg or his successor (to be named in the event of retirement or incapacity of Mr. Goldberg).

7. Offset. Rockshore agrees to use any funds recovered from Miller or RO to offset any payments made by or due from Kagy under this Agreement as well as to pay for any fees or costs incurred by the Parties in this Litigation.

8. Assignment of Choses in Action. Pursuant to sections 953 and 954 of the California Civil Code, Kagy assign any and all choses in action they have as of the date of this Agreement against David Charles Miller, RO Financial Group, Inc.

9. Mutual Release. In consideration of the compromise of the Parties' respective claims and defenses and subject to the terms of this Agreement, each of the Parties, and their respective successors, owners, stockholders, members, directors, partners, beneficiaries, executors, agents, employees, past employees, representatives, attorneys, insurers, heirs and assigns, do hereby fully release and forever discharge each other, their

past, present and future officers, executors, successors, owners, members, directors, partners, beneficiaries, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns, and all other persons, firms, employers, or corporations with whom any of the former have been, are now or may hereafter be affiliated, of and from any and all past or present contracts, agreements, claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation of any nature whatsoever, known or unknown, whether based on a tort, contract or other theory of recovery, and whether for compensatory or punitive damages, which each other at any time heretofore has bad, owned or held or each other now has, owns or holds or which each other could, shall or may hereafter have, own or hold against each other by reason of any matter, cause, fact, thing, act or omission whatsoever since the beginning of time through the date hereof. This mutual release does not release the Parties from the performance under and enforcement of the Agreement.

10. Waiver of Unknown Claims. The Parties are aware of California Civil Code section 1542, which, to the extent applicable, provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties understand and acknowledge the significance and consequence of the Parties' waiver of rights and benefits under California Civil Code section 1542 after having discussed said waiver with their attorneys. With full awareness and understanding of the above provisions, the Parties hereby waive any rights they may have under section 1542, as well as under any other statutes or common law principles of similar effect.

11. No Amendment. This Agreement may not be amended or modified except in writing signed by all the Parties.

12. Severability. If any part of this Agreement is found unlawful or unenforceable, the remainder of this Agreement shall not be affected by that finding.

13. Governing Law. This Agreement will be construed as a whole in accordance with its fair meaning and in accordance with the laws of the State of California. The venue for any action to enforce or interpret this Agreement shall be in Orange County, California.

14. Successors and Assigns. The Parties agree that this Agreement is binding upon and shall inure to the benefit of their respective successors, heirs and assigns.

15. Independent Advice of Counsel. The Parties represent and declare that in executing this Agreement, each relied upon the advice and recommendations of their own independently selected counsel. Further, the Parties represent that each has had sufficient opportunity to consult with their respective attorneys about the terms and conditions of this Agreement prior to its execution. Each Party has read and fully understands the full contents and effect of this Agreement, and consciously and voluntarily contracts and agrees as provided herein.

16. Attorneys' Fees. In the event that any action, suit, or other proceeding is instituted to enforce this Agreement or arising out of a breach of this Agreement, or arising from or related to this Agreement in any way, the prevailing party shall recover all of such Party's reasonable attorneys' fees and costs incurred in any such action, suit or other proceeding, including any appeals or petitions arising from or related to the same.

17. Counterparts. This Agreement may be executed in counterparts, and the electronic and/or photocopied signature of any Party hereto shall be considered as if it were an original signature hereof.

ROCKSHORE INVESTMENTS, LLC

BY: ______________________
DAVID GIANULIAS

Its: PRESIDENT

Dated: JANUARY 26, 2016

RODERICK A. KAGY, on behalf of himself and 1 WORLD FOUNDATION LIMITED

______________________

Dated: January 31, 2016



111393.1